T.C. Memo. 2001-293


UNITED STATES TAX COURT


BOB J. AND ERNESTENE SAMS, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 16023-99, 16024-99,    Filed November 5, 2001.
          18739-99.


    Frederick W. Southern, Jr. (specially recognized), for

petitioners Ernestene Sams, Carter Bonding Co., and Sherri Lynn

Sullivan.

    Bruce K. Meneely, for respondent.

---

    [1]Cases of the following petitioners are consolidated
herewith:  Carter Bonding Company, Inc., docket No. 16024-99; and
Sherri Lynn Sullivan, f.k.a. Sherri Lynn Reavis, f.k.a. Sherri
Lynn Faulkenberry, docket No. 18739-99.

## MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, _Judge_:  Respondent determined deficiencies in and additions to tax and penalties with respect to petitioners' Federal income taxes as follows:

Bob J. & Ernestene Sams
Docket No. 16023-99

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662 |
|------|-----------|-----------------|-----------|
| 1994 | $16,793 | $4,133 | $3,358.60 |
| 1995 | 35,955 | – | 7,191.00 |

Carter Bonding Company, Inc.
Docket No. 16024-99

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6655(a) | Sec. 6662(a) |
|------|-----------|-----------------|--------------|--------------|
| 1994 | $11,095 | $555 | – | $2,219 |
| 1995 | 23,386 | 5,847 | $610 | – |

Sherri Lynn Sullivan
Docket No. 18739-99

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
|------|-----------|-----------------|-----------|
| 1992 | $11,835 | $2,959 | $517 |
| 1993 | 4,740 | 1,185 | 197 |
| 1994 | 26,928 | 6,732 | 1,387 |
| 1995 | 44,771 | 11,193 | 2,443 |

For reasons discussed below, the only issue remaining in these cases is whether the gross income of petitioner Carter Bonding Company, Inc. (Carter Bonding), should be determined by reference to the fees charged for bail bonds written during the years in issue, as reported to the Oklahoma Insurance Commission, or whether Carter Bonding's gross income was a lesser amount as claimed by petitioners.  Unless otherwise indicated, all section

references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

At the time that the petitions were filed, Bob J. and Ernestene Sams (the Samses) resided in Tulsa, Oklahoma. Carter Bonding had its principal place of business in Tulsa, Oklahoma. Sherri Lynn Sullivan (Sullivan) resided in Broken Arrow, Oklahoma.

Carter Bonding was in the bail bond business during 1994 and 1995. The stock of Carter Bonding was owned by Ernestene Sams (Sams), who was the president of Carter Bonding, and by Sullivan, who was the vice president of Carter Bonding. Sullivan is the daughter of the Samses.

Sams and Sullivan wrote bonds in 1994 and 1995 for Carter Bonding. However, most of the bonds written during those years were written by Sullivan because Sams was sick. Sams conducted business for Carter Bonding primarily over the telephone and did not go into the office much during those years.

Carter Bonding charged a fee, or bond premium, in an amount that was up to 15 percent of the face amount of the bail bond, for the service of writing the bail bond. Depending on the circumstances of the particular client, Carter Bonding received full, partial, or no payment of the bond premium at the time the

bond was written. Premiums were paid by cash, by check, in person, or by mail. Each premium payment received was recorded in an accounts receivable ledger that was maintained by client name and included the date and amount of the payment and the client's account balance. A receipt was issued to each client who made a bond premium payment. To assure payment, Carter Bonding sought cosigners for the bonds and pursued litigation to recover the unpaid fees.

Sams terminated Sullivan's employment with Carter Bonding in 1996. On January 3, 1997, Sams sent a letter to Sullivan demanding the return of Carter Bonding's books and records. Sullivan's employment with Carter Bonding resumed in the middle of 1999.

Carter Bonding filed Monthly Professional Bondsman Reports with the Oklahoma Insurance Department in 1994 and 1995, reflecting the total amount of the bond premiums that Carter Bonding charged to its clients during each monthly reporting period. On the reports filed with the Oklahoma Insurance Department, Carter Bonding reported total premiums of $140,520 in 1994 and $164,885 in 1995.

Carter Bonding employed an accountant to prepare its Federal income tax returns. The accountant reported gross receipts based on the bank deposits of Carter Bonding. Carter Bonding reported gross receipts of $75,565 on its 1994 Federal income tax return.

A Federal tax return prepared for 1995 for Carter Bonding reflected gross receipts of $64,939.  That return, however, was not filed by Carter Bonding.

Respondent determined that Carter Bonding received and failed to report income in the amounts of $64,955 in 1994 and $164,885 in 1995.  The amount for 1994 represents the difference between the total premiums reported to the Oklahoma Insurance Department and the bank deposits used in preparing Carter Bonding's Federal income tax return for 1994.  The amount for 1995 represents the total premiums reported to the Oklahoma Insurance Department because Carter Bonding did not file an income tax return for 1995.  Respondent determined that the unreported income constituted constructive dividends to the Samses and to Sullivan.

Respondent also determined that the Samses and Sullivan had unreported income equal to deposits in their personal bank accounts.  Respondent has now conceded that the amounts of constructive dividends to the Samses and to Sullivan should be only the amounts deposited in their personal bank accounts and should not include the unreported income to Carter Bonding.  The Samses and Sullivan have not disputed that the unexplained deposits in their personal bank accounts were constructive dividends from Carter Bonding.  Other adjustments in the statutory notices, such as unreported rental income of Sullivan,

have either been expressly conceded by either respondent or petitioners or abandoned by petitioners.

OPINION

Petitioners contend that respondent improperly used the premium amounts reported to the Oklahoma Insurance Department rather than using the bank deposits to determine Carter Bonding's gross receipts for 1994 and 1995. Petitioners argue that they collected only approximately 45 percent of the bond premiums charged, which were the amounts reflected on the face of the bonds written and the amounts reported to the State authority. They failed to produce the accounts receivable records that allegedly supported these contentions, blaming, at various times, Sullivan and another employee of Carter Bonding. At trial, Sullivan belatedly produced a handwritten journal of doubtful authenticity. Based on our observation of the witnesses and review of the entire record, we cannot accept petitioners' claim that the uncollected premiums during the years in issue approximated $65,000 in 1994 and $100,000 in 1995.

Respondent was entitled to use the reports filed with the Oklahoma Insurance Department to reconstruct Carter Bonding's income in the absence of adequate books and records. See United States v. Gosnell, 961 F.2d 1518, 1520 (10th Cir. 1992); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Meneguzzo v. Commissioner, 43 T.C. 824 (1965).

The reconstruction need only be reasonable in light of all facts and circumstances.  Giddio v. Commissioner, 54 T.C. 1530 (1970). Petitioners have not persuaded us that the gross receipts so determined should be reduced.  We do not believe petitioners' unsupported claim that only 45 percent of the fees charged were received.  We have no reliable basis for any estimate of the amounts not paid.

To reflect concessions by respondent,

Decisions will be entered under Rule 155.